# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPERIAL CAPITAL BANCORP, INC., a Delaware corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, a receiver for IMPERIAL CAPITAL BANK,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 10CV1991-LAB (WMc)<br><br>**ORDER RE: WITHDRAWAL OF REFERENCE** |

The FDIC, as receiver for a bank previously held by chapter 11 debtor Imperial Capital Bancorp, has filed a motion to withdraw the reference of two disputes from the bankruptcy court.

The first dispute, the so-called "Tax Refund Proceeding," concerns contested claims to certain federal tax refunds paid to the bank. The FDIC and Imperial agree that this dispute should be heard in this Court. Indeed, after the FDIC filed its motion to withdraw the reference, Imperial filed a civil action in this Court seeking the recovery of the tax refunds. *See* Case No. 10-CV-2067. Imperial has also said it does not object to the withdrawal of the Tax Refund Proceeding. (Dkt. No. 1-7 at 1.) The FDIC's motion to withdraw the Tax Refund Proceeding from the bankruptcy court is therefore **GRANTED**.

Related to this first dispute is another: Imperial alleges that the FDIC violated the

automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a) by filing a Form 56-F with the IRS in an attempt to collect the tax refunds at issue.  The FDIC does not mention the alleged automatic stay violation in its original motion, but it does ask the Court to "withdraw the reference . . . *of all matters pertaining to*" the Tax Refund Proceeding, and this presumably includes Imperial's charge that the FDIC violated § 362(a).  This apparently caused some confusion for Imperial, which noted in its opposition to the motion to withdraw the reference that it "does not believe that the FDIC-R is requesting withdrawal of the reference with respect to the second cause of action (the "Stay Violation Action") in the Adversary Proceeding."  (Dkt. No. 1-7 at 1 n.1.)  The FDIC clarified in its reply brief that, in its view, "the entire Tax Refund Proceeding, including the alleged Stay Violation is subject to withdrawal."  (Dkt. No. 5 at 1.)  So, there is a genuine dispute between the FDIC and Imperial as to whether this Court, rather than the bankruptcy court, should hear Imperial's claim that the FDIC violated the automatic stay.

The second dispute that the FDIC seeks to withdraw from the bankruptcy court concerns a "Capital Maintenance Claim" the FDIC filed against Imperial.  The claim, in essence, is that Imperial promised and failed to maintain the bank's minimal capital requirements, and it arises out of an $88.9 million Proof of Claim that the FDIC filed with the bankruptcy court.  The FDIC believes this Court should adjudicate the matter; Imperial believes the bankruptcy court should.

**I.     Legal Standards**

Bankruptcy courts have the authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157.  But cases arising under title 11 — or matters within those cases — may also be withdrawn from bankruptcy courts and heard by district courts:

> The district court may withdraw, in whole or in part, any case or proceeding . . . on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The first sentence of § 157(d) has been read to provide for "permissive" withdrawal. The second sentence has been read to provide for "mandatory" withdrawal.

Permissive withdrawal, which needs to be supported only by "cause," requires a district court to consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen*, 124 F.3d 999, 1008 (9th Cir. 1997). If "non-core" actions predominate — actions, that is, that "do not depend on bankruptcy laws for their existence and that could proceed in another court" — permissive withdrawal may be appropriate. *Id.*

There are two prevailing interpretations of the mandatory withdrawal language in § 157. The first, which is a textual interpretation, supports the withdrawal of any dispute that requires the consideration of non-bankruptcy law. *See, e.g.*, *In re Addison*, 240 B.R. 47, 49 (C.D. Cal. 1999) ("Mandatory withdrawal is required in those cases that call for material consideration of both title 11 and non-title 11 federal law."). The problem with this interpretation is that it "would force district courts to withdraw matters in which [Bankruptcy] Code questions overwhelmingly predominate and consideration of non-Code statutes would be *de minimus*." *In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984).

The alternative, and more favored interpretation requires that the consideration of non-bankruptcy law be "substantial and material" before withdrawal is mandatory. *See, e.g.*, *Holmes v. Grubman*, 315 F.Supp.2d 1376, 1379 (M.D. Ga. 2004). The court in *Holmes* reasoned that "mere application of federal law does not make withdrawal mandatory; withdrawal is only mandatory when complicated, interpretive issues are involved, especially with matters of first impression or where there is a conflict between bankruptcy and other laws." *Id.* (internal quotations omitted). It added, "what is necessary for a mandatory withdrawal is that the resolution of non-bankruptcy law must be essential to the dispute." *Id.*

The Ninth Circuit has not indicated which standard of mandatory withdrawal courts should apply, but it has approved the "substantial and material" test in dicta. *See Sec.*

*Farms*, 124 F.3d at 1008 n.4 (implying that mandatory withdrawal requires "the presence of substantial and material questions of federal law").  The majority of courts have adopted a "substantial and material" standard, and this Court will, too.  *See, e.g.*, *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 222 (D. Hawaii 2006).

## II.     Stay Violation Action

Given the parties' agreement that the Tax Refund Proceeding itself should be withdrawn, the Court sees no reason to leave the related Stay Violation Action behind.  To be sure, bankruptcy courts can and do consider alleged violations of the automatic stay, but the FDIC's defense in the Stay Violation Action requires consideration of its statutory duties and/or prerogatives under the Internal Revenue Code and certain Department of Treasury regulations, not to mention a potential conflict between those and the automatic stay provision of the Bankruptcy Code.  The Court finds that withdrawal is appropriate under both the permissive and mandatory withdrawal standards.  See *Imperial Credit Indus., Inc. v. FDIC*, Case No. 3-CV-8627, Dkt. No. 13 at 3–4 (C.D. Cal. Jan. 26, 2004) (withdrawing adversary action brought by debtor against FDIC "for taking enforcement actions pursuant to the statutory authority granted to the regulatory agency . . . .").  The FDIC's motion to withdraw the Stay Violation Action from the bankruptcy court is **GRANTED**.

## III.    Capital Maintenance Claim

The Court sees the Capital Maintenance Claim differently, but first, some background.

A bankruptcy trustee, or a debtor-in-possession like Imperial, "shall be deemed to have assumed . . ., and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency . . . to maintain the capital of an insured depository institution."  11 U.S.C. § 365(o).  A claim under § 365(o) is given priority over other creditors' claims in the bankruptcy process.  On June 15, 2010, the FDIC filed a proof of claim in Imperial's bankruptcy case seeking at least $48,200,000 under § 365(o).  Imperial filed an objection to the claim on July 29, 2010.  It is Imperial's position that it never made a commitment to maintain the bank's capital, and it claims that it would be forced to convert its bankruptcy from a chapter 11 restructuring to a chapter 7 liquidation if it is forced

to satisfy the claim.

### A.  Mandatory Withdrawal

The "core proceedings" that bankruptcy courts may adjudicate include "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). The FDIC's Capital Maintenance Claim surely concerns the allowance or disallowance of a claim against Imperial, and so the presumption is that the bankruptcy court can and should hear it. But the FDIC argues that Imperial pledged to maintain the bank's capital in non-bankruptcy, regulatory *proceedings*, and that this is sufficient to establish that resolution of the issue will require "substantial and material consideration" of non-bankruptcy *law*.

Before the bank fell into receivership, Imperial responded to a "Prompt Corrective Action" initiated under 12 U.S.C. § 1831o, which is a process requiring undercapitalized institutions to "submit an acceptable capital restoration plan to the appropriate Federal banking agency." 12 U.S.C. § 1831o(e)(2)(A). Regulators don't have to approve a capital restoration plan unless "each company having control of the institution has (I) guaranteed that the institution will comply with the plan until the institution has been adequately capitalized; and (ii) provided appropriate assurances of performance." 12 U.S.C. § 1831o(e)(2)(C)(ii). The FDIC's position is that, in the process of responding to the PCA, Imperial reached a number of agreements with the bank and the Federal Reserve Bank of San Francisco in which it made a capital maintenance commitment to the bank.

The Court sees a significant difference between a bankruptcy court looking beyond the bankruptcy record to pre-bankruptcy proceedings and the bankruptcy court being called upon to actually resolve significant questions of federal law. Only the latter is grounds for mandatory withdrawal. *See Hawaiian Airlines*, 355 B.R. at 223–24 (suggesting that mandatory withdrawal is only appropriate in cases involving significant interpretation of federal law, or the interpretation of uncertain legal standards). As the Court understands the Capital Maintenance Claim the *factual basis* for it arose under non-bankruptcy laws, but the actual resolution of it does not involve significant and challenging questions of federal law. At most, the bankruptcy court will need to have some understanding of the regulatory context

in which the alleged capital maintenance commitment was made, but that is no reason for this Court to relieve the bankruptcy court of the task of adjudicating the dispute.

In support of its argument that the bankruptcy court can resolve the Capital Maintenance Claim, Imperial cites a decision in *In re Colonial BancGroup, Inc.* in which the bankruptcy court did just that. *See* Case No. 09-32303 (M.D. Ala. Sept. 1, 2010). It did so, Imperial explains, considering "(I) an agreement between the debtor and the Federal Reserve Bank of Atlanta, (ii) a memorandum of understanding between the debtor and the Alabama Banking Department and the Federal Reserve Bank of Atlanta, and (iii) a cease and desist order against the debtor." (Dkt. No. 1-7 at 8.) As the Court reads the decision — which, at 42 pages, shows bankruptcy courts to be perfectly capable of determining whether debtors have capital maintenance commitments under § 365(o) of the Bankruptcy Code — the bankruptcy court treated the issue as one of contract construction, and its analysis focused heavily on the language of the relevant documents. *See id.* at 24, 28 ("The language is broad and general and requires only that the Debtor 'assist' the Bank. The language does not specify any particular method of assistance or prescribe specific steps that the Debtor must take."). Imperial argues that "[i]n reaching its decision, the court did not engage in any analysis of non-bankruptcy federal law." (Dkt. No. 1-7 at 8.) The Court agrees, and finds the decision persuasive. The FDIC's attempt to distinguish it goes to the respective merits of the capital maintenance commitment claims in that case and this one, and therefore misses the mark. (*See* Case No. 10-CV-1992, Dkt. No. 4 at 5–6.)

The FDIC argues that "[t]he resolution of the Claim Objection concerning the Capital Maintenance Commitment will . . . require substantial and material consideration of federal banking laws governing the regulatory supervision of troubled depository institutions and holding companies," and it cites the *Imperial Credit* decision referenced above in which, it argues, "the District Court found that withdrawal of claims concerning a capital maintenance commitment was mandatory since it required 'substantial and material' consideration of the FAIA." (Dkt. No. 1-1 at 15–16.) As the Court has suggested, it believes federal banking laws may provide the *context* for the Capital Maintenance Claim, but it does not believe this

dispute requires the kind of interpretation of federal law that warrants removing it from the bankruptcy court. And on a close reading of *Imperial Credit*, the withdrawal approved in that case was not the withdrawal of a discrete capital maintenance dispute, as it would be here, but rather the withdrawal of an adversary proceeding initiated by the debtor against the FDIC requesting "that liability be imposed on the FDIC for taking enforcement actions pursuant to the statutory authority granted to the regulatory agency by the FAIA." *Imperial Credit* at 3. The court determined withdrawal was appropriate because the dispute required "[a]nalysis of the FDIC's statutorily-granted powers and whether the FDIC acted within the bounds of such powers." The analysis here is ostensibly simpler: did Imperial, pursuant to a Prompt Corrective Action, make a capital maintenance commitment that the FDIC can now enforce? The Court does not find that significant questions of non-bankruptcy law are implicated that invoke the mandatory withdrawal provision of § 157. To the contrary, the merit of the Capital Commitment Claim seems to be *chiefly* a question of a bankruptcy statute: 11 U.S.C. § 365(o).

### B.    Permissive Withdrawal

Nor is permissive withdrawal appropriate. Yes, the Prompt Corrective Action that is the basis for the FDIC's Capital Commitment Claim was executed in the forest of federal banking laws, but the claim is still a core proceedings under the bankruptcy laws and squarely arises under 11 U.S.C. § 365(o). The bankruptcy court is more familiar with that statute than the Court is, and at this point it is far more familiar with the history of Imperial's chapter 11 case. The FDIC's best argument is that the Court has already agreed to withdraw the Tax Refunding Proceeding and the Stay Violation Action, but considering the additional judicial resources that resolution of the Capital Commitment Claim will consume, along with the interest in uniform administration of the bankruptcy laws, the Court finds that the better course of action is to leave the Capital Commitment Claim with the bankruptcy court.

The FDIC's motion for withdrawal — mandatory *or* permissive — of the Capital Commitment Claim is therefore **DENIED**.

### C.    Jurisdiction

The FDIC also makes a jurisdictional argument that, quite frankly, the Court struggles to make out. (*See* Dkt. No. 1-1 at 9–11.) On the one hand, the FDIC appears to be arguing that Imperial can only object to its Capital Maintenance Commitment proof of claim — or must *first* object to that claim — through an administrative receivership claims process, and that this is a substantial question of federal law that goes to the actual resolution of the Capital Maintenance Claim and therefore supports mandatory withdrawal. *See* 12 U.S.C. § 1821(d)(13)(D) (providing that "no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver"). Presumably, then, the FDIC wants this Court to hear the Capital Maintenance Claim, but only insofar as it needs to find that Imperial has not exhausted its administrative remedies and that *no court* — district *or bankruptcy* — can adjudicate the Capital Maintenance Claim.

On the other hand, the FDIC appears to be pushing this jurisdictional argument in its own right as a basis for this Court to actually adjudicate the Capital Commitment Claim, rather than as a basis for mandatory withdrawal under the "substantial and material" test. Here, the argument is that, even if Imperial has exhausted the proper administrative channels, a district rather than a bankruptcy court *has* to hear the Capital Maintenance Claim. As the FDIC puts it, "Until the Debtor's Receivership Claim has been disallowed, it may only pursue an administrative appeal within the FDIC or commence an action in one of two federal district courts — the federal district court for the District of Columbia or for the federal district in which the failed bank had its principal place of business." (Dkt. No. 1-1 at 10.)

There are two problems with the second argument. The first is that it seems to misunderstand the exhaustion rule of 12 U.S.C. § 1821(d). As the FDIC frames it — "*Until* the Debtor's Receivership Claim has been disallowed" — a party can appeal a claim determination administratively, or go to a district court for relief, *while* the claim is pending. Obviously, that can't be the rule. Perhaps the FDIC meant to argue something along the lines of "Only when the Debtor's Receivership Claim has been disallowed may it pursue an

administrative appeal or commence an action in one of two federal district courts." That is the exhaustion rule. *See Freeman v. FDIC*, 56 F.3d 1394, 1400 (9th Cir. 1995) ("The effect of [§§ 1821(d)(13)(D) and 1821(d)(6)] is to require anyone bringing a claim . . . to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process."). But assuming the FDIC meant to say this, and its argument is that the "Debtor's Receivership Claim" has been disallowed and Imperial must file an action in a *district court*, the FDIC overlooks the fact that bankruptcy courts are adjuncts of district courts. *See BankUnited Financial Corp. v. FDIC*, 436 B.R. 216, 221 (S.D. Fla. 2010) (holding that, under § 1821(d)(6), "a statutory grant of jurisdiction to a district court does not divest the bankruptcy court of coextensive referral jurisdiction"); *see also In re Parker N. Am. Group*, 24 F.3d 1145, 1150 ("Claimants must exhaust these administrative remedies before seeking district *or bankruptcy court* review") (emphasis added). So, if the FDIC's argument is that Imperial has exhausted its administrative remedies and can only adjudicate the Capital Maintenance Claim in a *district* court, the FDIC is probably wrong.

But if it's the FDIC's argument, instead, that Imperial has *not* exhausted its administrative remedies and must do so, the Court again is skeptical. Section 1821 "creates an administrative claims process for claims against the assets of *failed banks* held by the FDIC as receiver." *Freeman*, 56 F.3d at 1399 (emphasis added). The Capital Maintenance Claim is not a claim against the failed bank of which the FDIC is the receiver. It is a claim against Imperial, the debtor-in-possession. Indeed, it is an odd suggestion that Imperial must resort to the FDIC's administrative claims process to defend itself against a proof of claim filed by the FDIC itself. That implies that under § 1821 Imperial has a duty to exhaust *defenses* to claims that it doesn't even know will be asserted against it — an implication the Ninth Circuit has rejected. *See Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 793 (9th Cir. 1993) (holding that § 1821(d)(13)(D) "does not divest a district court of jurisdiction over an affirmative defense").

Perhaps the FDIC's rebuttal to this is that the Court is construing too narrowly the words "claims against the assets of failed banks." In fact, courts have no jurisdiction over

"any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . . ." 12 U.S.C. § 1821(d)(13)(D). Still, the Court does not believe this language encompasses a claim against a *debtor* for assets alleged to have been committed to the failed bank, especially when that claim is brought by the FDIC receivership. To the extent the jurisdictional scope of § 1821 is expansive, it is expansive with respect to *who* is bringing the claim. *See Freeman*, 56 F.3d at 1402 (§ 1821(d) jurisdictional bar applies to claims brought by creditors *and* debtors). The Court sees no basis in the statute, or in the cases interpreting the statute, for applying the jurisdictional bar to the FDIC's proof of claim against a chapter 11 debtor who previously held the depository institution of which the FDIC is receiver.

Thus, the Court's impression is that the FDIC's jurisdictional arguments for withdrawal are mistaken, and it declines to withdraw the reference of the Capital Maintenance Claim on their basis. The FDIC is not foreclosed from making these arguments before the bankruptcy court, which may see the issue in a clearer or different light than the Court does and decline to exercise jurisdiction over the matter.

**IV.   Conclusion**

The FDIC's motion to withdraw the Tax Refund Proceeding and the related Stay Violation Action is **GRANTED**. The motion to withdraw the Capital Maintenance Claim is **DENIED**.

**IT IS SO ORDERED**.

DATED: October 14, 2011

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge